Thank you, Your Honor. Gailen Cummins on behalf of Dr. Starkey and the Calhoun Association of San Diego and Imperial County. I'd like to reserve five minutes for rebuttal, if I might. This case presents an issue that I think is somewhat a first impression for this circuit, and that is whether Dr. Starkey's removal from a government steering committee that was convened to comply with state and federal law and to specifically obtain the reverse viewpoint of landowners by cattle ranchers and agricultural interests is lawful for the speech-based reasons that the county set forth or is unlawful and violates the First Amendment and Fourteenth Amendment as well as California's broader constitutional provisions. Well, I'm kind of ‑‑ I'm just sort of ‑‑ I think we know really what the facts are here, but I'm sort of looking at the, you know, since it is a little bit of first impression, the general policy implications here. Now, you would agree they don't have to have this steering committee, correct? No, Your Honor. I believe that they do have to have it. So you're looking for the proposition that governments have to have advisory or steering committees? No. Under California law, Section 2815 of the California Fish and Game Code, that actually mandates for the Natural Community Conservation Planning Act that there be a public participation process through public working groups or advisory groups. And Section 2815 specifically says that the State shall establish that, that the process for public participation has to go throughout the entire development and review, and that, in fact, they have to ensure that persons, including landowners, have an adequate opportunity to be involved in that process. Okay. But it could be something more public comment. It doesn't ‑‑ are you ‑‑ it doesn't have to be a specific type of committee, does it? Yes, it does, Your Honor, because the county agreed to that. So let me ‑‑ Well, now, okay, here you have ‑‑ here you have the issue. Once they said that they were going to do it, then you have the issue that, and once they put her on, then that puts you into the First Amendment issue. But I'm trying to say beyond that, that, you know, what ‑‑ where you're going to have problems with me is in terms of how broadly you want to go as far as this goes, that if you're saying, well, let's just say they asked a lot of times, and what if they had just said, no, you can't be on this particular committee? Are you ‑‑ what sort of right are you saying she had to be on that committee? This is not about a First Amendment right to have been seated on the committee in the first place. I know this case isn't. We don't dispute that. Yeah. So I'm trying to limit you to what this is about. So ‑‑ Also, if all this was was a local initiative and there was no requirement under a local ordinance or anything else for a steering committee, then I would agree with Your Honor they would not have to have one. However, under State and Federal law, the county sat down and agreed with the U.S. Forest and Wildlife Services and California Fish and Game, and they specifically hammered out an agreement to comply with State and Federal law, and in 6.4 of that agreement, the county specifically says the local agency will, will form the steering committee. Well, it says the department shall establish. That's under the California Fish and Game Code, Your Honor. Okay. That's under California law where the Fish and Game Code agreed that that, you know, has to establish. So you had to have ‑‑ okay. The county had to have the committee. Now, there was no requirement that they create a seat on the committee for the Cattlemen's Association, but they nonetheless did. Is there some documentation of any kinds of conditions or agreements or anything pertaining to who's ‑‑ who the Cattlemen's Association could select to be its representative? No, Your Honor. And, in fact, again, the county sat down with the State and Federal governments and agreed to specifically form a steering committee. And if you look back to State law specifically, that had to have the diverse viewpoints of landowners like cattle ranchers, and it had to have the agricultural interests that would be affected. So tell me which statute you're talking about right now. California Fish and Game 2015 is the one that Your Honor was citing. Okay. And it specifically says they have to establish ‑‑ shall establish a public participation program. Section 2810 says the Department can enter into an agreement with, like, a local agency to achieve these requirements of State law. And then you look to the fact that 6.4 of the agreement that is signed off by the U.S. Forest and Wildlife Services, the California Department of Fish and Game and the county specifically says that the county will establish the steering committee. Okay. So in accordance to fulfill the State and Federal laws for public participation, the county agreed it would go ahead and form the steering committee so it would establish for the county and for the Federal and State governments the public participation. So if they hadn't agreed to that, they could have established the public forum in any way that they ‑‑ they had to make sure that they had a public forum, but it wouldn't have necessarily have to take this forum. That's correct, Your Honor. All right. And also that what they agreed to do doesn't say the cattlemen have a right to be on this. That's right, Your Honor. But then they ultimately, after saying no, they said yes. That's right, Your Honor. And there isn't ‑‑ they probably could have at that point said, okay, give me some applications and we'll decide ‑‑ we'll pick who we want. But they didn't. They let the cattlemen designate the person. In fact ‑‑ Okay, so once she's on, then she's off when she states her views on public and private property. That's right. And so that's where you're saying, you know, there could have been any number of ways that she didn't have to be there, but once she got there, when she got kicked off, it was because she stated, I mean, essentially stated what are sort of amendment views of use of your property, that the government doesn't, you know, they were just trying to ‑‑ they didn't need to go on private property. They could do this on public property. Right. She's stating the views of the landowners that the state and federal law requires to be heard from who happen to be cattle ranchers in an area of San Diego County where most of it is public property or private conservation land that the county can control. But a large part of it, 27% of it, is the private land where the landowners are cattle ranchers as well as, you know, a few other private landowners. Now, I'm not saying that she was, but would you concede if she were disruptive under the case law, that could be a basis to remove someone? I would disagree with that, Your Honor. I think if she was disruptive under the case law, she would have to ‑‑ the county would have to engage in a content neutral, viewpoint neutral, time, place and manner restriction. I mean, after all, this committee is ‑‑ But there are ‑‑ but there is ‑‑ there are some limits on the First Amendment, and I'm not ‑‑ there doesn't appear to be evidence here that she was disruptive, so that doesn't really matter. I agree with you on that. But there is case law to support the fact that when someone is disruptive, you know, they can't behave in just any way they want. I would say, Your Honor, you're right. At some point, you know, if they totally obstruct the entire functioning of the committee, they've been warned, they've been removed from meetings where they were first, you know, disruptive, at some point. Your Honor is probably correct. Let's concentrate on viewpoint discrimination. Could they have said, as maybe they did for some time, we don't want a cattleman on this ‑‑ a cattleman representative on this board? We've got some other private property people we don't want, because we don't want to hear that view. Well, they certainly had to hear, by State statute, landowners, which are cattle ranchers, and they had to hear agriculture. Now, I assume that there could be other groups that represent those interests that might have fulfilled that requirement. They can't possibly, yeah, and they can't possibly pick every group that might want to be on. That's right. So the Cattle Association actually went to, you know, local government people. They asked the Board of Supervisors to intervene, and they got a C. Are they entitled to pick and choose viewpoints that they want to hear on that? Yes. They are. Because the State statute specifically is to seek out diverse viewpoints. No, no, no. He wasn't asking whether the Cattleman's Association. He's asking whether the Steering Committee can limit the views that it wants to hear. It can limit the topics, and I think the topic ‑‑ I'm sorry if I misunderstood your question. I think the topic is naturally limited by what the Fish and Game Code requires, what the Federal Endangered Species Act requires, and the fact that the state and federal government specifically said, you know, we specifically. They didn't list other people. They said landowners, and they said agricultural interests. But what's your strongest First Amendment argument? Because this ‑‑ Dr. Starkey doesn't ‑‑ this fact situation doesn't neatly fit into, you know, the typical First Amendment analyses that we would apply. She doesn't fit neatly under Pickering. Sinclair, whether this is a public forum or a limited public forum. Sinclair. But to me, I want to know what First Amendment rubric you think is your strongest basis for reasoning about this case. Well, I think first and foremost this is viewpoint‑based retaliation, and I think it's clear. She had one viewpoint that she expressed, and that was a different configuration for the hardline policy that would be on public lands and private conservation lands and accept out agricultural parcels. That is the view of the cattle rancher landowners in that area. That was the view that the statute specifically allowed her to express her viewpoint. Now, the county can listen to it. That's their obligation, to listen to the steering committee. It can ignore it if it wants to. It can impose time, place and manner restrictions if it wants to. But it certainly can't say to her, we don't like that viewpoint. We think that's critical. And by the way, the wildlife people over here don't like that viewpoint either. Of course, that's what diverse viewpoints are all about. Well, I guess I wonder, I guess the district court judge found that Dr. Starkey's freedom of speech was not abridged by her removal because she could still participate in the committee meetings of the public. In what ways do you contend her freedom of speech was limited then? Well, first and foremost, I think the fact that the county had to actually establish the steering committee and was required to do so by the state and federal departments of wildlife shows that it's not the same. It's just a public comment section. And then the county, Section 2815 of the Fish and Game Code specifically says these are the interested people or what the county calls stakeholders including the landowners who have an adequate opportunity to provide input into lead agencies. They will talk to the state and federal wildlife agencies who will be involved in preparing the plan. And as the county says, they'll basically be reviewing all the habitat policies that will achieve the state and federal requirements for looking at all of this and developing a plan that actually works for East County. But I guess the county's offered the seat to someone, other cattlemen. They can put someone else in there. So how is it that the cattlemen aren't being represented if they can have someone else in the seat? Because what the county has said is that the viewpoint cannot be expressed, and that is the Cattlemen's Association's viewpoint. They said when you come in here and say we want a different configuration or we think there should be, whether it's for agroterrorism reasons or any other reasons, you can't say that because we consider that viewpoint to be negative or uncooperative. We can't say well, we don't like this viewpoint, we don't like that viewpoint, or you know what? The wildlife board members over here don't like hearing that. So that's uncooperative. If this is a — if the steering committee is required to be set up by government, are the members of the steering committee engaged in governmental speech when they speak? No, Your Honor, not in a policymaking sense. And, again, this is not like, you know, President Obama's administration and maybe, you know, the House White Spokesperson on health policy. This is not government-driven speech to carry out specific agenda. So are you saying Pickering doesn't apply at all? I'm sorry? Does Pickering apply at all? Pickering, I thought, was a public employee case. Am I correct on that? Right. But if they're essentially working for — you know, if you say that they have to create this committee, so therefore they're on the committee, then that's a little bit like what you're talking about, the Obama administration. Right. I see various classes of people. Number one, there's the true public employee, like, you know, assistant U.S. attorney or district attorney. Clearly not that category. This is not that category. Then you have basically appointed people in policymaking decisions who carry out the government's speech. That's not the situation. Then you have elected and appointed officials, like in the Miller v. Hull case and in Stella v. Kelly, which are a little bit more akin to Dr. Starkey, because they're people who might have been elected or appointed, either one, but their job is to carry out their independent judgment, and they cannot be removed for speech-based or viewpoint-based discrimination. Dr. Starkey, I think, is even a step beyond that, because her specific role on the committee was diverse viewpoints. And the county knew when they put her on as a representative of the Cattlemen's Association that she would be representing the view of cattle ranchers in that area. Well, now, this was her preliminary injunction, right? Well, you're asking to have her put back on. Yes, ma'am. Okay. And so what's left of the lawsuit if you win here? I think that she gets to be an effective participant in the Stone committee. No, but I mean, if this is a preliminary injunction and it's on the likelihood to succeed, then there's still some – we're still talking permanent injunction? Or what's left down? What would be down in the – you're still something in the district court, right? Right, Your Honor. It would be a permanent injunction. And damages? There are no damages claimed. Anyway, the county has identified two acts as to why Dr. Starkey was removed, that in response to her request to the committee members, including Dr. Starkey, that she stood up under item six of the agenda, where the committee members were asked to give their comments on the hardline policy. She stood up and gave her comments and read them into the record. It's seven paragraphs. The facts are undisputed. It took a few minutes. She was never asked to stop speaking. She was never dabbled down. She was never told the format by which she gave her comments was inappropriate. She was never told she was disruptive, uncooperative, or anything else. But two weeks later, they wrote a letter, the county wrote a letter, saying she needs to be removed. And the reason is because her statement, her viewpoint, we don't find cooperative. That's the gist of it. There's no other evidence in the record except for one letter that her attorney wrote about a California Public Records Act request made before she was appointed to the steering committee. So in the process of meeting and conferring on that letter as to whether or not the county had complied, which would ultimately produce more documents after that meeting and confer process, the county belatedly said, oh, you know, she threatened to sue the county, too, and we find that uncooperative. So the record is clear. There's only two acts that form the basis of her being uncooperative, and both of those acts are speech acts, one of which is clearly viewpoint-based. With respect to the rest of the test, I think it's, you know, it's clearly a substantial and motivating factor, but for the fact that she had stood up and read the comments that she did and espoused the viewpoint that she did, she would be on the committee today. Were these comments made at a public meeting? I'm sorry? Were the comments made at a public meeting of the steering committee? It is my understanding that all of the committee meetings are public, that there might be some secret or, I'm sorry, some private subcommittee meetings, but that all of the public meetings are required to be public by law. The difference is not that. So were these comments made at a public meeting? Yeah. I believe they were, Your Honor. Yes. Okay. So there's a very material difference between being a member of the committee and actually formulating the plans, making a record, raising new issues that might have to be addressed, getting your viewpoint heard by the state and the federal agencies in addition to the local agency. It's far afield from simple public comments where you can stand up for two minutes and not be an active part of drafting and, you know, implementing the plan. So we certainly assert that just being able to speak at the public comment section is nowhere near any substitute for being a community member. I really honestly think these cases are not distinguishable from Miller v. Hall and Stella v. Kelly. I think that it's clear that it was viewpoint-driven, opinion-based, and those courts, the First Circuit, made absolutely clear that these kind of activities come within the heartland of the First Amendment. They come within the heartland of these kind of public board members, municipal board members, commission board members, authorities, to do their jobs. And once they do that, in this case, the county could have ignored it. The county has made a big point about the fact that ultimately they're the ones with the final say. That's true, but the state and federal governments have mandated that certain groups be heard, and they have to do that through the steering committee. All right. Counsel, you're set. Thank you, Your Honor. Thank you. May it please the Court, Ellen Pilsaker for defendants in Appalachia. There is simply no First Amendment right to require a government audience. Here, what we're talking about is a government audience. And what we're talking about is the steering committee itself. Well, you have to allow for public comment, don't you? Yes. And, in fact, we do. It's uncontested in the record. But let's say even I'm with you on the fact that you didn't have to create this committee. But once you did, once you did, would you concede that this committee is a semi-public forum? Between the committee and the committee meetings, and I absolutely agree that the steering committee meetings, which were held in public, constituted a limited public forum. And the ironic thing about this case is that Dr. Starkey is complaining that the harm to her here is she is being invited to speak, allowed to speak, as a member of the public. And I do want to say something quickly about the steering committee. There's nothing in the statute that requires that. And, in fact, the agreement that Dr. Starkey is relying on, it's part of the document submitted with the request for judicial notice, Exhibit 1, was not in effect at the time of the incidents underlying this lawsuit. On page 18. So from your perspective, why was she removed? She was removed, as the district court properly found, for being uncooperative. There's an allegation here that there were separate letters, one saying, we don't like what she said, and another saying, we don't like what she said. So she was removed for being uncooperative, but what exactly was the conduct or what did she do? Yes, the two things were, instead of speaking, as she said she wanted to engage in a dialogue, she didn't do that. She sat and read a lengthy statement, and it is lengthy. Put your notes away, then. You're giving an oral argument. Put your notes away. You're saying that, I mean, that's kind of an absurd argument, that if a person's making a comment, if they need notes to help them, that that's not, they're not giving a point of view. No, that's not, that's not what I'm intending to say. What I'm saying is. She read her statement. If some people aren't comfortable saying something off the top of their head, and they write it down and they read it, how can they be penalized for that? The point was that what the committee felt was that it was not an attempt to engage in a dialogue, as she said she was trying to do. It was simply, let me sit here and read this into the record. That was the perception. So she read her point of view into the record. Did anyone say, you know, you're taking up too much time, you can't do this, the way we want to proceed is through a dialogue right then and there? Not that I'm aware of. There are minutes of the meeting. There is not a transcript. So we don't have evidence of that. The other. What was the other thing? The other thing is that there were threats of lawsuits. And that is in the very same, the first letter, the June 12th, 2006. You know, threats are also protected by the First Amendment. I understand that. But what the committee members were saying was that the sense that they had was that by threatening to sue, that there was a potential for ill will, and that's exactly what the district court found, that the subcommittee, or excuse me, the steering committee, it was important that the people work together, work collaboratively. Was there any ill will anyway if you took, if the county, by virtue of this plan, took away some of the rights of the Cattlemen's Association's landowners in order to effectuate the Endangered Species Plan? Wasn't that going to generate, I mean, wasn't that out there regardless of what Dr. Starkey did or said? I think there's a difference between is everybody going to be happy with the plan eventually, and what are the workings of the steering committee? What was the purpose of the steering committee? It was to advise the council, right, the city council or the county? The county board of supervisors, yes. Okay. So its purpose is advisory. So was it going to prepare a written report? Was it going to present the views that were expressed? How was it going to advise? It was going to come up with a plan that would then be presented to the board of supervisors, and the board of supervisors would be the ones to either vote to adopt it or to reject it. So what if there was a dissent to the plan and you presented that along? What is the harm of that? There is no harm to that. What I'm saying, though, here is that dissent could come, and in instances in the record did come from the public comment. There was a public comment period. Well, you know what? I think we can safely assume that nobody really agrees with the county that being a member of the public and having two or three minutes to do a comment, as opposed to being a member of the steering committee and requiring other people on the steering committee to hear your point of view, perhaps go on to discuss it, perhaps be influenced in formulating the plan that's ultimately presented to the county. There's a big difference there. I mean, at least I, for one, don't accept that those two are identical. Okay. I mean, the steering committee has some special status than just being members of the public at large who choose to go down and talk. Well, you have, like, for example, you have in Good News Club v. Milford Central School, the Supreme Court case, the Supreme Court reiterated that when a government has created a limited public forum, it must not discriminate against speech on the basis of viewpoint, and any restriction must be reasonable in light of the purpose served by the forum. Why do you think, or why does the county think, that Dr. Starkey's removal was not viewpoint discrimination and was reasonable in light of the purpose of the committee? Well, there, I think. And it really was a question, but I read it from my notes. Okay. I needed my notes to make sure I got it right. What the district court looked at, and I think properly, and I want to make this point in light of the standard of review, which is that the district court's findings of fact are reviewed for clear error. She did look at the statements that were made in the county's letters, which were presented by Dr. Starkey, saying that Dr. Starkey had not demonstrated a willingness to cooperate or collaborate. This was the reason that she was removed. And in discussing the balance of hardships, the court specifically found that an injunction reinstating Dr. Starkey would have the effect of disrupting committee meetings and risking animosity among committee members. All right. Disruption is kind of a legal term when we're talking about the Fourth Amendment. And so it would seem to me here that we have her statement, and then we also know that there was the issue over when she didn't get certain documents, she said, you know, I'm going to file a lawsuit to get the documents or whatever, I'm entitled to them or whatever. It doesn't seem to be that factually things are really, the facts don't really seem to be in dispute. So from that standpoint, you really don't have factual findings here. You have a legal conclusion that that's disruption, and therefore it's not viewpoint that they can remove her. So, I mean, really this is pretty de novo. It's pretty hard to say this is. Well, but I think what the district court. I think disruption can be, I mean, clearly if she were, let's say she decided to, she read a statement against the death penalty here. She saw that she had this limited public forum, and she read a statement against the death penalty. Well, that's disrupting the business of the committee. What she made a statement on clearly isn't off point. It's not what they wanted to hear, but it's not off point. And that's different. But the idea that it's not what she wanted to hear, I think that's not clear from the record. What is clear from the record is when the Cattlemen's Association was asking for representation on the committee, and initially the county was saying no, the Cattlemen's Association wrote a letter, it's in the excerpts of records beginning on page 57, stating what their position is. And it's pretty much the same as what Dr. Starkey stated. Well, it's the problem. You made your mistake when you let them on. Okay? You probably could have kept them off. But once they got on, then you're, then if this is a limited forum, then you're controlled by, you know, Supreme Court First Amendment speech. But as I'm saying, the forum is really the meeting as a whole. And I think it is important to look at the cases that indicate that there's no, there is no First Amendment right to require the government to listen, to give an audience to a particular viewpoint. And that's why I think it's important that Dr. Starkey is relying heavily on the agreement to say that the law required this steering committee. The agreement was not in effect at the time of the incidents. It's very clear that it became effective in November of 2008. And the county employees who were on the steering committee, were also members of the steering committee. The steering committee? The county. I guess what I'm really getting to is who decided? Was there a vote of the steering committee to remove Dr. Starkey from the committee? Or who did it? What happened? What happened was that the members, as was indicated there, at least one of the members of the committee was one of the wildlife agencies did complain. And the feeling of the county members was she was not a team player. She was not a campaigner. The feeling of the county members. Who wrote what to whom? How did this happen? The letter that was sent to the Cattlemen's Association asking that a different representative be selected was sent by the Department of Planning and Land Use, signed by the interim deputy director. Of the county land use. And then they're on the steering committee? Or is he on? Or she? Or whoever signed it? There are a number of members of the Department of Planning and Land Use on the steering committee. But who chose who would be on the steering committee? Or who approved who would be on the steering committee? The Department of Planning and Land Use. And there are people from some of the, like, the state agencies that I think it's kind of a given that they are on it. But. Given by what? That's just how it's been set up before. So there wasn't a specific vote. There have been other steering committees used. Well, now I think that there's kind of an understanding if you don't go along with the program, you're off. But I don't think that's true. Because as I said at the very beginning, the very first letter that the Cattlemen's Association sent, it made their viewpoint clear. And yet. And you let them on anyway. Yes, we did. And then we said to the Cattlemen's Association, select someone else. Someone we didn't say, select someone else who's going to only agree with the positions of other people. Because there were diverse positions. Well, but that's like, that would be the same type of thing. Yeah, you're entitled to a lawyer. But the other side says, I'd like a lawyer that's a little not quite so good and not quite so articulate and not quite, you know. You've got a tough position to defend. I think you started by saying there's no First Amendment concern with the committee, basically. First, this is not a First Amendment issue. But you're defending it in a ways that take that are exceptions from the First Amendment, disruptive or something like that. I'm just I'm wondering whether somebody who speaks or discusses for the steering committee is in any kind of a forum, whether they're engaged in governmental speech, whether they're engaged. You know, it's if if the if somebody is entitled to pick who's on the steering committee, they could. If there's no First Amendment concern, they can pick viewpoints. They can say, well, we want somebody who says this and we don't want somebody who says that. And we're going to assemble a committee that way. And if somebody doesn't like it, they can elect a new board of supervisors. That's. And I think that that's true, though, that government when there's when the government can decide that they want to pick people for for a steering committee who have a particular position. But I'm saying here the record doesn't support that. And but the government can establish committees for a particular purpose. My recollection was it was the Miller case that the government can choose the message that it wants. It can choose people who are going to go with its message when it is the one that's speaking. And the reason that they're that I'm talking about First Amendment concerns is because this the meetings were, in fact, public. And there were people who spoke as members of the public. I think the position would be stronger if there were no public there. I mean, what you're really saying is I think you're trying to say that the steering committee isn't a forum. And who's on it or who isn't on it has no First Amendment implications. I think that's what you're saying, or at least part of what you're saying. That is. That is correct, Your Honor. But when she was there, were members of the public there? When she made when she read her statement, were members of the public there? Yes, because the committee was meeting in public. That's. So how can that not be public? How is that not a limited public? It sounds like someone was irritated that she seemed like she was communicating with the public there. And you're saying she wasn't collaborative. She wasn't because she got up and she read a statement. So who was she reading it to? The other members of the committee and there were members of the public there, right? Yes. My understanding is her statement is she was reading it to the committee members. But there were people. There were public people there. Yes. How many people were there? I really do not know. All right, counsel. Well, you've used up your time and more. And so I think we understand both the arguments of both sides here. And we will submit Starkey v. County of San Diego. And the session of the court will be adjourned for today.
judges: Canby, Wardlaw, Callahan